You may begin whenever you're ready. Thank you, Your Honors. Good morning, Your Honors. I'm Robert Stock, and I'm appearing on behalf of the Petitioner, which is the union in this case. This is my first time arguing before the Ninth Circuit. I spoke to many of my colleagues and other lawyers before I came here, and I told them I was coming, and they all said that was very exciting. I'm not sure that that's the word I would have chosen. Certain things are exciting. I'm not sure about this. This is more anxiety-producing than anything else for me. I haven't been a lawyer as long as they have. I've only been a lawyer for about eight years. So maybe that's why they find it exciting and I don't. I'm not sure about that either. This particular case — We'll try our best to make it dull for you, if we can. Pardon me? I said we'll try our best to make it dull for you. Thank you very much, Your Honor. I appreciate that. This case has been going on for approximately four years, so it's consumed a little less than half of my career as a lawyer. I was the lawyer who filed many of the original unfair labor practice charges back in 2003. Mr. Stark, let me get to the part of this that I want to focus in on. And that is the question of how extensive the board's reasons have to be if they agree with the factual findings of the ALJ but have a different remedy in mind. You seem to take the position that unless there's a very extensive explanation, they have to adopt the recommendation of a Gissel order. And unless there's a big explanation, they've got to track along the recommended remedy as well as the recommended findings. And I guess my question to you is this. If the standard or default is not to have a bargaining order, which seems to be the law, that that's the unusual case in which there is to be a bargaining order rather than a new election, why does that take the same level of explanation as the nonstandard, if you follow what I'm asking you? I do. I do, Your Honor. I think that the problem here isn't simply that there were these factual findings that were made by the ALJ and therefore there was a record. Even if you assume that the board didn't have to make new factual findings, which is not really its province anyway, the board had to engage in some legal reasoning. The judge, the judge engaged in legal reasoning. Well, what the issue is, I understand what the board said. It's simple, but it's there. It says, you know, the factual findings are fine. The unfair labor practice is there. And the question of remedy, we're just going to go with the standard one because we think the standard will solve the problem well enough. I mean, it's a pretty basic explanation, but what more would you expect them to say? It's a pretty conclusory explanation, and it's hardly an explanation. It's more just an opinion without explanation. In other words, isn't that the board's job to have its expertise brought to bear on the problem? No. The board's job, like any reviewing body, is to explain what it does. We're all ---- It did, didn't it? Pardon me? It did. It did not. With all due respect to the ---- It said, it said, we've seen the finding of the fact and such. We've looked at this. Standard remedy should do it. We don't see that this is a case that requires a drastic, special, unique kind of remedy. It's just a plain old run-of-the-mill case. But even for a disorder, which I understand is an extraordinary remedy, it's not the standard remedy. Even for that, there is a legal standard by which you evaluate whether that extraordinary remedy should be imposed. They didn't address that standard. They didn't evaluate the factual findings in light of that standard. There are no cases that I could find that say that they have to do this in the context of a Gissel order. But there are many cases, Ninth Circuit cases and Supreme Court cases, that say it's an abuse of discretion for someone not to explain. And this was not, you used the word, extensive. It wasn't. It was two sentences. It was summary. It wasn't anything extensive about it. Depending on the two sentences, it could be a pretty potent explanation, depending on the two sentences. Well, I can read you the two sentences, but I'm sure you've read them, I'm sure. What is your best case for a draw and an ---- in this little world of Gissel orders, and if you decline to issue one, how much do you have to say? But what is your best analogy for something that was a small explanation that was deemed not good enough? What I came up with a couple of cases that are helpful, although they're not in the Gissel context. One of them is a Ninth Circuit case, which is El Torito La Fiesta Restaurants v. the NLRB, which is 929F2nd 490, and I have a quote from it at page 493, which is that the board must, the board, quote, must explain its decisions so that a reviewing court can determine whether it attempted to effectuate the Act's policies in a reasoned and deliberate manner. The court will not enforce an NLRB order that clearly departs from the board's own standards. That's one case. And by the way, that wasn't a perfect quote. There are some brackets in there. Kagan. I understand. That's fine. The other case that I came up with is a Supreme Court case, which is the NLRB v. Metropolitan Life Insurance Company, which is 380 U.S. 438. And in this case, the court, and again I quote, said, due to the board's lack of articulated reasons for the decisions in and distinctions among these cases, the board's action here cannot be properly reviewed. Essentially what the board did here, in my view, evaluating it as you must by the standard that you should here, which is an abuse of discretion, is the board committed an abuse of discretion in giving virtually no explanation. We can disagree, obviously, on whether the two sentences that the board uttered were sufficient explanation, but I think they were pure opinion. They just simply said, Gissel order is needed. Does it make a difference that the ALJ had recommended a Gissel order as the remedy? If the ALJ had not made that recommendation, would what the board said be enough? I would assume that if the ALJ had not recommended a Gissel order, that the union would have been appealing to the board that she was wrong, as opposed to the company. In that context, I would assume that if the board simply agreed with the ALJ, that would not be enough, because there would be no review. There would be no analysis of anything. I mean, in general, you as a reviewing court, when you agree or disagree with a lower court, you explain why. Well, you know, I hope. But does it make any difference that the board chose the standard package, if you will, rather than something out of the ordinary? Is there less of a demand for an explanation when the remedy is the standard remedy? I don't think so, because at the point that the general counsel of the board asked for a Gissel order, and the ALJ imposed or recommended a Gissel order, and explained why she recommended a Gissel order, at that point, when that's appealed, the members of the board in Washington have a responsibility to explain it. The fact that it's an extraordinary remedy doesn't change the fact that it's evaluated in the same way as anything is evaluated, by legal standards. They didn't do that. They didn't even come close. I cited two, four cases that have been issued by the board in the region since this briefing was done, in my four additional citations. And the reason I cited those four cases was because they were rejections of the Gissel order, in all four, and they were much longer explanations. They were, but that doesn't actually tell us whether they were required to. What I was striking about that is still the absence of a case that deals with what is the minimum required. In other words, if one thing is required and someone does ten, you can bring in a million examples of someone doing ten, but if the minimum is one of whatever it is, it still doesn't tell you much about the minimum. And I guess that's my difficulty throughout this. There are lots and lots of examples of fuller discussions, but I'm struggling to figure out what is the minimum that's required. I think, like so many things, it's a line-drawing exercise. I agree with that. But I think that they came the board in this case was so far removed from that line. They were so below the line in their two sentences that it's not as difficult to establish what the minimum should be. And I think that you have enough other cases, in broader cases, as to what constitutes an abuse of discretion, because a — an administrative agency does not explain the rationale for its decision. One more case I would cite, because you asked me for cases, is another Supreme Court case in the context of an administrative body, but not in the context of the NLRB. And it's called Bowen v. American Hospital Association. It's at 476 U.S. 610. And they, too, said that the agency had to explain that the — the governing of this nation carries with it the correlative responsibility of the agency to explain the rationale and factual basis for its decision. I don't think that's what the board did. Just to find — well, the board did say, we've gone over the decision. We've looked at the things. We understand — we — we recognize what was done wrong by the employer. We see what they were. We list them. And they say, we find that a Gissell bargaining order is not necessary. We think that a traditional cease and desist and other affirmative remedies will do it. Now, what would you have them say instead? I would have them look at the — Now, what would you have them say? Just sort of give me, say, one — one or two sentences. I would have them explain why, in the context of Gissell and other cases that evaluate Gissell, what the standard is for imposing a Gissell remedy and why these facts don't meet that. And I would have them cite to authorities one, at least. You mentioned whether they have to cite to one or more. They didn't cite to any. I would have them cite to at least one authority for their conclusion, and that's all it was, was a conclusion. It was no analysis at all. Do you want to save some time for rebuttal? Sure. You have about three minutes left. Thank you. I appreciate that, Your Honor. We'll hear from the board. May it please the Court, my name is Stacey Garrick Zimmerman, and I represent the National Labor Relations Board. This case is about the board's application of discretion and expertise to conclude that traditional remedies will correct the company's unfair labor practices and cleanse the atmosphere so a second election can take place. Let me ask you somewhat the flip side of the, or a similar question that I asked opposing counsel. It's clear that if the board is going to impose a Gissell order, it has to give a pretty extensive explanation. Why wouldn't the symmetry require an equally intensive explanation when the ALJ has recommended such an order at great length and the board is rejecting it? Well, Your Honor, the board's traditional remedies here are the baseline, and the courts and the board have recognized that when it departs from that, when it goes beyond to grant an extraordinary remedy like a Gissell bargaining order, that it has to justify that. And simply the fact that the administrative law judge found that it was appropriate doesn't mean, doesn't have any effect on the board's discretion and expertise in determining whether the unfair labor practices rise to the level that would warrant such an extraordinary remedy. And when the board simply grants its traditional remedies, it doesn't have to justify that. Would it make any difference if the ALJ, as I recall, looked at this as a Category 2 case rather than a Category 1 really, really outrageous case? Does that make any difference to the level of explanation that is required? It probably would. I mean, the fact is that the Gissell Category 1 cases are, I mean, those very, very, very, very rarely happen. And I actually can't think of one off the top of my head that's recently been issued. They're all pretty much Category 2. So if the ALJ did find that it was that extensive, I would think that the board would probably want to go into more analysis. Well, what they want to is not really an issue here. What they have to do, at a minimum, for us to review it is what's at issue. Have they said enough for us to understand what they've done and evaluate it? Well, I think the board here, in simply granting its traditional remedies, especially since this outcome is fully consistent with all of its previous cases, and the simple fact that it did state here, looked at the unfair labor practices, and it clearly said that it believes that the traditional remedies will cure the harm here. And after those remedies have taken effect, that the second election can go forward. And that was the board's analysis. It's fully consistent with precedent. And it also, the important thing here, too, is that the reason why this bargaining order is so extraordinary is because it deprives the employees of their right to a secret ballot election. And the board's very concerned about that and wants to protect that. But it didn't really say that, what you're saying now. It just said it's good enough. It didn't go into a balance explicitly of the employees' rights versus the fact that the employers' acts have been sufficient to overbear the will of employees. I mean, that's the whole premise of this all. Right. Well, I think that's the assumption. That's why the Act favors elections. These traditional remedies have been issued in countless cases now. And it's, there's no requirement when the board is simply giving its traditional remedies to go beyond and say, we're going to stop here because of these additional remedies. And it's certainly not an abuse of discretion here for the board to simply state that it believes that's not departing from the status quo, not to go into more analysis of that. When it's simply granting the traditional remedies, the board, there's no precedent that says the board's required to justify that. Does it make a difference that the ALJ did discuss the facts, but at the end of the day, the ALJ's conclusion is, because we, because they had majority support and you impeded the election process, a bargaining order is the appropriate remedy. And if you take that, if you take the ALJ's conclusion by itself, that's going to be true probably in 99 percent of the cases. The union enjoyed, theoretically, majority status. The employer impeded the process. And that's her reason that she orders it. And the NLRB just said, yeah, we see all that, but we think a regular bargaining order is good enough. Does it make a difference that the ALJ didn't really describe and go into detail about why this is, makes this, what makes this such a unique case? It's possible that the board looked at that, and I'm not sure how much the, the ALJ's decision here, while the board obviously considered that, the reality is that the ALJ is not the board, and not the administrative law judge is charged with carrying out the labor laws. So it's the body that applies its expertise to determine whether or not, I guess it would be appropriate. Following up on that, can you explain the relationship between the ALJ and the NLRB, the board? Is the board in a more of an appellate function, or is the ALJ just making non-binding recommendations? Is it more of an independent adjudicator, or just an employee of the board? How does that relationship work? Well, the administrative law judge makes recommended factual findings and a recommended order, which then goes to the board, and then the board will adopt those recommendations. So it's a little different than, say, the district court going to the... It's more like the relationship between a magistrate judge and a district judge, a little bit. The NLRB can change the factual findings, right, based on the record? Oh, absolutely, yeah. In fact, there's sort of a, it's like it used to be between the IJ and the BIA. The NLRB can make its own factual findings, let me put it that way. Right, yeah, and sometimes it will find unfair labor practices that the ALJ didn't find. Sometimes it will change the remedies. It does all sorts of manner of things. And it can do that even if there are no exceptions filed, correct? Or do they have to be exceptions to make changes? I believe that the board can sui sponte, make changes without exceptions, and then at that point the party that is unhappy with that finding can motion for rehearing, I believe, before the board, before the case goes to the circuit courts if a party appeals it or the board goes for enforcement. In here, both the Supreme Court and the Ninth Circuit agree that the termination of a need for a bargaining order is peculiarly committed to the board's discretion calling for its expert estimate as to the effects of the particular unfair labor practices on the election process. The board explicitly stated that it was not granting the Gissel here because the coercive effects of the unfair labor practices can be satisfactorily mitigated in a fair rerun election ensured by the board's traditional remedies. The board doesn't have a heightened showing when denying a Gissel order. And the supplemental authority that the union cites is consistent with the outcome in this case to the extent that there's more analysis. It could have to do with the fact that there was a dissent in all of those cases, and I think three out of the four cases the board was also overturning some of the unfair labor practices, so the parameters of the case changed and the basis for the recommended Gissel order also changed. And in short, to the extent that the union is arguing that the boards didn't engage in enough analysis in the decision, it still failed to show that the board was actually wrong in what it did. And the cases that we cite in our brief shows that this is consistent with the other cases that the board cited. Well, if there were, I know you don't concede this, but for the purpose of my question, if the board gave an insufficient explanation of its bottom line, then wouldn't the only thing we could do be to remand it for reconsideration and a fuller explanation? I mean, the whole premise of it is it would be insufficient for review on the merits. I mean, that's as I understand it. If the board or this Court did think that the board should have engaged in more analysis, I believe the proper outcome would be a remand to the board. However, I would also like to point out, I believe that the cases that the union was citing has to do with the board's factual findings. I don't know, I'm not seeing a case saying something similar to those cases in the context of the remedial order here. I think the board is particularly placed in a position where it has a broad experience in labor law, it sees lots of unfair labor practices, and it's charged with applying that expertise to ensure that the employee's rights are preserved. And here, while this is a case between the union and the company, the board is ultimately looking at the rights of the employees. And one of the cornerstones of the act is the right to a secret ballot election. And the board takes setting that aside and imposing a union very, very seriously. Thank you, counsel. You've exceeded your time. I think we understand your position. Thank you, Your Honor. We'll hear from the intervener. Good morning, Your Honors. My name is Pat Jordan. I represent the intervener. I think I could characterize myself as sort of a grizzled old veteran with 40 years of dealing with NLRB. And I'm going to keep my observations very brief, and hopefully this helps the Court. As I see this case, it is impossible to create a syllogism on the basis that because the board is required to explain the granting of an extraordinary remedy, that in turn that means it must explain why it doesn't grant an extraordinary remedy. In short, what the union seeks to do is turn the logic on its head by suggesting that by doing an unextraordinary act, you nevertheless need to meet an extraordinary standard explaining why you're not doing that. I think it seems apparent, as Judge Fernandez pointed out, that this is more or less a garden-variety kind of NLRB case. Were there people discharged? Yes, there were. Did the board undoubtedly take into consideration the fact that we called to their floor, they issued their judgment on whether a bargaining order should be issued? My answer would be yes. Is it clear from the opinion that the board took a look at how close the election was? Yes, 42 to 37. Is it apparent from other cases that sometimes when a union really gets skunked after they've got a card majority, that the board will take a look at whether or not the violations are really pernicious to determine whether or not a bargaining order is appropriate? Absolutely. Here, the board exercised its statutory authority and its expertise, as acknowledged by this circuit and the U.S. Supreme Court and every other circuit in the country, to fashion a remedy that's supposed to work. The board said in its judgment that a reinstatement order is going to send a strong order and there are terminations. The board also took a look at the size of the unit, 91 employees, not a small unit. It pointed out that there was not widespread dissemination of the alleged coercive conduct and fundamentally drew upon its expertise. Well, it's more than alleged at this point. It's been found by the board. In fact, I even withdrew some of the exceptions recognizing that. No question about it. But nevertheless, Your Honor, what happened was the board said we have 70 years of experience in understanding what does and doesn't work in terms of creating an atmosphere that can allow a fair election. I don't think that this Court has, on this standard of root, a review, the capacity to simply disagree with the board. But that's not what we're being asked to do. We're being asked to decide whether what has been written by the board is sufficient for us to review or whether the board needs to say more. For example, the things that you and Ms. Zimmerman have been explaining are not in the board's order, and that's really the question before us as to whether it's sufficient for review. And I think the two sentences or three or however we enumerate that are loaded with facts and judgment with respect to that call. And it seems to me that the standard of review is are you to create a bright line for the board or, as you questioned yourself, is it correct that the best that the union can come out of this would be a remand to the board to say, look, we need a remand to the board. A couple more observations. Just because an ALJ makes a recommended order or suggests one, it doesn't rise to the level of findings of fact. And under a case known as standard drywall, the NLRB will defer to findings of fact based upon demeanor and credibility determinations made by it. Sotomayor, here there are no questions of fact. That's correct. That's my point. What there is is a recommended order to deal with the effect of the unfair labor practices. And what I think the union is doing is saying, look, if the board isn't going to accept a recommended order, it has an automatic duty to go into a myopic explanation as to why they're not accepting that recommended order. And in my judgment, that simply isn't the law. And what the board did in this case is consistent with a myriad of cases cited by counsel for respondent and, frankly, cited by counsel for the appellant. It's on all fours with how the board deals with cases involving terminations, large bargaining units, and where an ALJ has recommended a bargaining order. My last point is that, really, as we argued in our intervener brief, what the union seeks here is a change in the law. And Congress, the House of Representatives, have a bill right in front of them, which they passed, and we're looking at the whole question of whether there ought to be elections. That isn't a question that's before this Court. Thank you very much for your attention, Your Honors. And I believe you have some rebuttal time remaining, Mr. Stock. I don't think the union is asking you to create a bright line here. I think that the Court can easily see that there just was insufficient explanation here to be able to review what the board did. That doesn't mean that you have to create a bright line for the future, but in this case, the board didn't do a good job. Judge Fernandez asked me during my initial argument to articulate what the board should have said. And what counsel here said today and what Ms. Zimmerman said in her brief to this Court are things that the board might have said if they had chosen to do that, but they didn't. And there is law in the Supreme Court that says that you can't accept what counsel says in argument as a substitute for what the board should have done. And that's, again, the Metropolitan case that says that. A couple of minor things. My understanding is that if there are no exceptions to a ALJ's recommended order, that the order is automatically adopted by the board. In addition, as Mr. Jordan said, factual findings are rarely made by the board itself. Most often, the board defers to the factual findings of the ALJ. So, again, I don't think this is a difficult case in terms of whether the board provided sufficient explanation for you to review it. I think if the board did a little bit more, it might have been difficult. I might still argue it wasn't enough, but it would be easier for you to say it's enough.  Thank you very much, Your Honor. Thank you. We appreciate the arguments of all counsel. The case just argued is submitted.
judges: Fernandez, Graber, Ikuta